UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATTHEW WALKER, et al

    Plaintiffs,

v.

    Case No. 17-11034

    Honorable Victoria A. Roberts

FABRIZIO & BROOK, P.C., et al,

    Defendants.
_____/

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [Doc. 24]

Matthew and Stephanie Walker ("the Walkers") filed an amended complaint ("Amended Complaint") against the law firm of Fabrizio & Brook, P.C. ("Fabrizio") and Detroit Legal News Publishing, LLC ("Detroit Legal News"). The Walkers allege efforts to collect their mortgage debt by Fabrizio, and a notice of foreclosure sale posted and published by Fabrizio and Detroit Legal News, violated their rights under the Fair Debt Collection Practices Act and Michigan's Regulation of Collection Practices Act. The Walkers also allege that Detroit Legal News, in publishing the notice of foreclosure sale, violated the Fair Credit Reporting Act ("FCRA").

Detroit Legal News filed a motion to dismiss ("Motion") under Federal Rule of Civil Procedure 12(c). The motion is GRANTED.

I.    Background

The Walkers purchased a home and executed a mortgage that was assigned to The Note Authority, LLC ("The Note Authority"). Prior to March 14, 2017, the Walkers defaulted on their mortgage payments, and The Note Authority hired Fabrizio to

1

foreclose on the Walkers' mortgage. As a part of the foreclosure process, multiple letters were exchanged between the Walkers and Fabrizio in March and April of 2017.

On May 4, 2017, Fabrizio posted a public notice of an impending sheriff sale of the property for June 1, 2017 in the Detroit Legal News. The public notice stated that the debt and the Walkers were being pursued by debt collectors, that the mortgage debt is in default, and the amount owed was $56,825.94.

The Walkers claim that Fabrizio shared their personal information with Detroit Legal News through a private computer system called a portal. The information included their names, address, mortgage amount, loan balance, and the fact of the defaulted mortgage. The information was downloaded from the loan servicer or lender, and either manually or automatically populated into corresponding fields in the Fabrizio's computer system. By the click of a mouse, the Walkers' information was transmitted directly from Fabrizio's computer system to Detroit Legal News's computer system. According to the Walkers, there was little to no communication that occurred between employees of Fabrizio and Detroit Legal News; it all took place electronically. The Walkers acknowledge that the information uploaded by Fabrizio directly to Detroit Legal News via the portal was required by state foreclosure statutes. Once Detroit Legal News received the information, its computer system automatically populated with the information and formatted it into the public foreclosure notice seen in newspapers, the internet, and in county buildings.

The Walkers also allege that Detroit Legal News sold their public notice to target marketers. The Walkers claim that they are now being inundated with letters from attorneys, modification companies, and bankruptcy clinics which read about their

2

foreclosure and offered related services. This, according to the Walkers, added to the shame and embarrassment that the public notice caused.

According to the Walkers, Detroit Legal News is a consumer reporting agency, and the public notice is a consumer report, as defined by the FCRA. The Walkers allege that Detroit Legal News created the public notice based on inaccurate information from Fabrizio and with few, if any, reasonable procedures. Detroit Legal News then published the public notice, and sold it to target marketers. This lack of reasonable procedures, according to the Walkers, violates 15 U.S.C. § 1681e(b). Amended Complaint, Par. 4, 101, 105, 107, 109.

In its Motion, Detroit Legal News claims: 1) it is not a "consumer reporting agency" as defined by the FCRA; and 2) the statutorily-mandated foreclosure notice is not a "consumer report" as defined by the FCRA. For these reasons, Detroit Legal News argues that the Walkers fail to state a cognizable claim against it.

II. Legal Standard

   A. Motion to Dismiss

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) tests the legal sufficiency of a plaintiff's complaint. The Court reviews such a motion under the same standard as a motion to dismiss under Rule 12(b)(6). *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d, 291, 295-96 (6th Cir. 2008). As such, it must accept as true all well-pled material allegations in the complaint and "determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The Court may grant a motion for judgment on the pleadings

only where the movants clearly establish that no material issue of fact remains unresolved and that they are entitled to judgment as a matter of law. *Poplar Creek Dev. Co. v. Chesapeake Appalachia, LLC*, 636 F.3d 235, 240 (6th Cir. 2011); *Drew v. Kemp-Brooks*, 802 F. Supp. 2d 889, 892 (E.D. Mich. 2011). To withstand a Rule 12(c) motion, "a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007).

### III. Analysis

#### A. Consumer Reporting Agency

The Walkers allege the Detroit Legal News is a consumer reporting agency as defined by the FCRA, and is subject to 15 U.S.C. § 1681e(b). Detroit Legal News argues that it is not, and the Walkers' Amended Complaint does not allege that it regularly assembles or evaluates consumer information.

The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). A consumer reporting agency is any person or entity that regularly engages in the practice of assembling or evaluating consumer credit information or other consumer information for the purpose of furnishing consumer reports to third parties. 15 U.S.C. § 1681a(f). "This implies a function which involves more than receipt and retransmission of information identifying a particular debt." *Carney v. Experian Info. Solutions, Inc.*, 57 F. Supp. 2d 496, 501 (W.D. Tenn. 1999) (quoting *D'Angelo v. Wilmington Med. Ctr.*, 515 F. Supp. 1250, 1253 (D. Del. 1981)). The FCRA is not

4

directed at entities which supply consumer credit information to consumer reporting agencies, and which are remote from decisionmakers who rely on consumer reports to make credit decisions. *D'Angelo*, 515 F. Supp. at 1253.

As Detroit Legal News points out, the Walkers do not allege in their Amended Complaint that Detroit Legal News regularly engages in the assembly or evaluation of consumer information. Instead, the Walkers allege that through a mouse click, their information was transmitted from Fabrizio to Detroit Legal News. Once in Detroit Legal News's computer system, the information was automatically populated and formatted into a foreclosure notice that was publically distributed. Based on this description, Detroit Legal News is "merely a conduit of information, as opposed to an entity that in any way re-organizes or filters information." *Knechtel v. Choicepoint, Inc.*, 2009 U.S. Dist. LEXIS 109521, *15 (D.N.J. Nov. 23, 2009). "Obtaining and forwarding information does not make an entity a [consumer reporting agency]." *Ori v. Fifth Third Bank, & Fiserv, Inc.*, 603 F. Supp. 2d 1171, 1175 (E.D. Wisc. 2009).

In their response to Detroit Legal News's motion to dismiss ("Response"), the Walkers allege that they never used the word "conduit" in describing Detroit Legal News. While true, the Walkers do use phrases such as "takes the baton," "sends the information," and "hands it off" to describe the role that Detroit Legal News plays in the foreclosure process. Amended Complaint, Par. 104. These phrases are all but synonymous with the word "conduit."

Based on the Walkers' description, Detroit Legal News functioned only as the receiver and re-transmitter of the Walkers' debt information. *Carney*, 57 F. Supp. 2d at

5

501. It simply distributed the Walkers' credit information to the public and to target marketers.

The Walkers argue that because target marketers receive the public notice through paid subscriptions, Detroit Legal News is in direct contact with the ultimate user of their debt information. According to the Walkers, this direct contact makes Detroit Legal News a consumer reporting agency. However, numerous courts have ruled that an entity in contact with the ultimate user of the credit information does not qualify as a consumer reporting agency. See *Ori*, 603 F. Supp. 2d at 1175 (concluding that Fiserv, Inc., which transmitted a bank's mortgage documents to consumer reporting agencies, was not itself a consumer reporting agency); *Knechtel*, 2009 U.S. Dist. LEXIS 109521, at *12-15 (concluding that entities in the business of collecting background information on individuals and transmitting them to consumer reporting agencies, were not consumer reporting agencies). Contrary to the Walkers' argument, Detroit Legal News's contact with target marketers does not alone make Detroit Legal News a consumer reporting agency.

Even construing the Walkers' allegation in the light most favorable to them, they do not allege facts to suggest that Detroit Legal News is the type of entity regulated by Section 1681e(b).

### B. Consumer Report

Detroit Legal News argues that the public notice is not a consumer report.

To qualify as a consumer report, a communication must: 1) come from a consumer reporting agency; 2) bear on a consumer's credit worthiness, standing, or

capacity, his character, reputation, or personal characteristics, or his mode of living; and 3) it must have been used, expected to be used, or collected in whole or part for the purpose of serving as a factor in establishing the consumer's eligibility for: a) credit or insurance to be used primarily for personal, family, or household purposes; b) employment purposes; or c) other purposes authorized by the FCRA. 15 U.S.C. § 1681a(d); *Cheatham v. McCormick*, 1996 U.S. App. LEXIS 29702, *6 (6th Cir. 1996).

The public notice could qualify as a consumer report. In *Firneno v. Radner Law Group, PLLC*, the plaintiffs' complaint alleged that defendants obtained and used lists of consumers who maintain high credit card balances. *Firneno v. Radner Law Group, PLLC*, 2015 U.S. Dist. LEXIS 90914, *4-5 (E.D. Mich. 2015). The court inferred that the lists contained the amount of each consumer's total unsecured debt. *Id.* at *5. The plaintiffs' complaint also alleged that the defendants used the lists to identify and send marketing materials to potential clients. *Id.* at *8. The court concluded that the lists were consumer reports since they contained information that bears on creditworthiness, standing, or capacity, and the offering of debt-related services qualifies as an authorized purpose under the FCRA. *Id.* at *5, 8.

The Walkers allege that the public notices of foreclosure published by Detroit Legal News contain personal credit information, and are used by marketers to offer credit-related services. Thus, like the consumer lists in *Firneno*, the public notice could qualify as a consumer report.

However, even if public notices did qualify as consumer reports, the one published by Detroit Legal News does not. The first requirement to be a consumer report is that it be a communication by a consumer reporting agency. 15 U.S.C. §

7

1681a(d). *See also Cheatham*, 1996 U.S. App. LEXIS 29702 at *6. Importantly, the *Firneno* court concluded that the plaintiffs sufficiently alleged that the reports in question came from a consumer reporting agency. *Firneno*, 2015 U.S. Dist. LEXIS 90914 at *6.

The Walkers have not pled sufficient facts to support a finding that Detroit Legal News is a consumer reporting agency. In turn, the public notice of foreclosure cannot be considered a consumer report.

### C. User of Consumer Reports

The Walkers claim that even if Detroit Legal News does not fall under the definition of "consumer reporting agency," it is still subject to the FCRA as a user of a consumer report.

The Walkers are correct that portions of the FCRA do cover users of consumer reports. As the Sixth Circuit recognized, "[t]he FCRA imposes distinct obligations on three types of entities; 1) consumer reporting agencies; 2) users of consumer reports; and 3) furnishers of information to consumer reporting agencies." *Nelski v. Trans Union, LLC*, 86 Fed. Appx. 840, 844 (6th Cir. 2004). However, the operative word is "distinct," and the FCRA imposes different obligations on consumer reporting agencies than it does on users of consumer reports. *Wiggins v. Hitchens*, 853 F. Supp. 505, 509 (D.C. Dist. May 1994).

The Walkers allege that Detroit Legal News violated Section 1681e(b) of the FCRA. But as Detroit Legal News points out in its reply brief, Section 1681e(b) regulates only consumer reporting agencies. While Detroit Legal News cites no authority to support its proposition, a plain reading of Section 1681e(b), which only lists

8

consumer reporting agencies with the obligation to assure accuracy of consumer reports, leads to this conclusion. 15 U.S.C. § 1681e(b). Case law supports this argument as well. *See Wiggins*, 853 F. Supp. at 509-10 (dismissing Section 1681e(b) claim as insufficiently pled as a matter of law against defendants, who were not consumer reporting agencies, but could qualify as users of a consumer report).

The Walkers' argument fails.

IV. Conclusion

This motion is designed to test the sufficiency of the Walkers' Amended Complaint. The Court reviewed their allegations in a light most favorable to them. Doing this, and drawing all reasonable inferences in their favor, the Court finds that the Walkers do not allege enough facts to support their claims under the FCRA. They do not survive Detroit Legal News's motion to dismiss.

The motion is GRANTED.

**IT IS ORDERED**.

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: November 2, 2017